# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>WENDELL MAURICE CLARK,<br><br>Appellant. | No.  53771-1-II<br><br><br><br>PART PUBLISHED OPINION |

WORSWICK, J. — Wendell Clark appeals his conviction and sentence for rape in the second degree and assault in the fourth degree.  He argues that his trial counsel gave ineffective assistance by failing to move for a change in venue to a forum that had a higher Black population.  Finding no deficient performance, we affirm.[1]

## FACTS

Wendell Clark and SV began dating in March 2018.[2]  Clark is a Black man, and SV is a Caucasian woman.  By April 2018, Clark and SV had engaged in consensual sexual intercourse.

On April 21, Clark stayed overnight at SV's apartment.  That night, the pair were together in SV's bed and engaged in consensual vaginal intercourse.  At some point during the night, Clark engaged in intercourse without SV's consent.  SV told Clark "no" and repeatedly told him to stop, that it hurt, and that she did not want him to continue.  Despite SV's protestations and struggling, Clark did not stop.

---

[1] In the unpublished portion of this opinion, we address Clark's claim of prosecutorial misconduct and other arguments he raised in a Statement of Additional Grounds.

[2] We use the victim's initials to protect her identity.

The next morning, following a confrontation with Clark where he refused to leave SV's apartment, SV sent her daughter to a neighbor to call 9-1-1. Police officers arrived and arrested Clark. SV told police officers that she had been raped.

The State charged Clark with rape in the second degree, assault in the fourth degree, and tampering with a witness, all with domestic violence designations.[3] The case went to trial in May 2019.

Questions of race are central to this appeal. No Black people were on the jury venire. The record suggests the jury venire was not all Caucasian because during voir dire one juror stated the room was "full of white and brown faces," and one juror's first language was Mandarin. 2 Report of Proceedings (RP) at 239.

During voir dire, Clark's counsel noted that Clark was the only Black person in the courtroom and questioned potential jurors about racial bias. Counsel stated, "There's fifty-five people in this room right now and the only African-American in this room is Wendell Clark, okay? And as a matter of fact once this trial proceeds and goes from start to finish he will remain the only African-American person involved in this case. Okay?" 2 RP at 238. Clark's counsel went on to ask the potential jurors if they would "make sure that Mr. Clark gets a fair trial." 2 RP at 239.

None of the jurors endorsed racist views. Several jurors talked openly about race. One discussed unconscious bias, and another bluntly stated, "[a]s a Defendant I wouldn't be thrilled with the demographic of Vancouver, Washington." 2 RP at 239-40. At the end of this

---

[3] SV testified that Clark told her to lie to police officers about the situation and to inform the officers that he was not there.

discussion, defense counsel summarized by stating, "it sounds like everybody is – agreed that they're going to be very careful about reviewing evidence in this case and making sure that racial bias doesn't enter into it – do I have everybody's word on that? Okay. Thank you." 2 RP at 243. There is nothing in the record on appeal that otherwise describes the racial makeup of the petit jury.

The jury found Clark guilty of rape in the second degree and assault in the fourth degree, all involving domestic violence, but acquitted him of tampering with a witness. The trial court sentenced Clark to a minimum confinement of 114 months, the high end of the sentencing range, as part of an indeterminate sentence under RCW 9.94A.507.

Clark appeals.

ANALYSIS

Clark argues that his defense counsel's performance was deficient for failing to move to change venue based on the demographics of Clark County. He proposes we adopt a new rule whereby counsel representing a Black defendant in a county with few Black people must move to change venue to a county with a "realistic chance of having [B]lack people in the jury venire." Br. of Appellant at 17. Clark cites to numerous academic studies and cases on the subject of implicit racial bias; however, he cites no cases construing the court rule governing change of venue. We disagree that counsel performed deficiently here.

A.    *Legal Principles*

All actions shall be commenced in the county where the offense was committed. CrR 5.1(a)(1). A trial court may order a change of venue to any county "[u]pon motion of the defendant, supported by an affidavit that he believes he cannot receive a fair trial in the county

where the action is pending." CrR 5.2(b)(2). Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to be tried by a jury that is representative of the community. *State v. Barajas*, 143 Wn. App. 24, 34, 177 P.3d 106 (2007). However, "[a] criminal defendant has no constitutional right to a jury composed in whole, or in part, of persons of his or her own race." *Barajas*, 143 Wn. App. at 34.

A claim that a defendant was denied effective assistance of counsel is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance, Clark must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The failure to demonstrate either prong ends our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

To demonstrate that defense counsel's performance was deficient, Clark must show the performance was not objectively reasonable. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume counsel's performance was effective and reasonable. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To rebut this presumption of reasonableness, a defendant must establish "an absence of any legitimate trial tactic that would explain counsel's performance." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). Further, "an attorney's failure to raise novel legal theories or arguments is not ineffective assistance." *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011).

B.      *Counsel's Performance Was Not Deficient*

Clark argues that his defense counsel's performance was deficient for failing to move to change venue based on the demographics of Clark County.  We disagree.

We acknowledge, and cases have confirmed, that bias is a societal problem imbedded in our justice system.  *See State v. Behre*, 193 Wn.2d 647, 657-58, 444 P.3d 1172 (2019).  However, Clark makes a novel argument and he fails to argue his case in the framework on which his claim of error is presented: ineffective assistance of counsel.  Moreover, Clark would have us go beyond the holdings of any case to conclude that counsel rendered ineffective assistance by failing to take action that *might* increase his chances of having a Black person in the jury venire.  *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S. Ct. 1712, 1721, 90 L. Ed. 2d 69 (1986).  We recognize the impact of implicit biases, and although the cases Clark relies on compellingly show this impact, they otherwise do not support a finding of ineffective assistance in this case.  His argument fails for three reasons.

First, it is undisputed that Clark's argument is a novel legal theory.  And Clark's counsel cannot be ineffective for his "failure to raise novel legal theories or arguments." *Brown*, 159 Wn. App. at 371.  Indeed, Clark is unable to cite to any case even discussing his theory.

Second, Clark does not propose a workable legal test. There is no way to determine, for example, what portion of a county's population must be of the defendant's constitutionally cognizable racial group for there to be a "realistic possibility" that at least one person of the same group might appear in the jury venire.

Third, counsel thoroughly discussed issues of implicit bias during jury selection.  Clark's defense counsel explained that race was a potential issue and asked jurors to make sure Clark

received a fair trial, and "got everyone's word" to make sure that racial bias didn't enter into their decision. 2 RP at 238-43. He discussed unconscious bias. One juror stated that they would speak out if anyone expressed an opinion based on bias in deliberations. Another explicitly stated it was their obligation to overcome racial bias. At the end of this discussion, defense counsel summarized by stating, "it sounds like everybody is – agreed that they're going to be very careful about reviewing evidence in this case and making sure that racial bias doesn't enter into it – do I have everybody's word on that? Okay. Thank you." 2 RP at 243. Clark cannot show his counsel performed deficiently because the challenged action goes to a legitimate trial strategy or tactic. *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008).

To support his novel theory, Clark cites to *State v. Berhe*, 193 Wn.2d 647, 657, 444, P.3d 1172 (2019), to argue that not having any Black people on his jury venire implicates his constitutional right to fair trial by an impartial jury. In *Berhe*, after the trial, a juror came forward and alleged that racial bias during deliberations influenced the verdict. *Berhe*, 193 Wn.2d at 650. Our Supreme Court vacated and remanded the case for a new trial because the trial court did not exercise sufficient oversight of the jury or conduct a sufficient inquiry into the juror's allegations. *Berhe*, 193 Wn.2d at 650. But *Berhe* did not involve a question of the composition of the jury pool, venue, or ineffective assistance of counsel. Additionally, here, there was no claim that the jury was actually influenced by racial bias.

Clark also relies on *Pena-Rodriguez v. Colorado*, __U.S.__, 137 S. Ct. 855, 197 L. Ed. 2d 107 (2017), *Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), *United States v. Ray*, 803 F.3d 244, 259, n.8 (6th Cir. 2015), *Dukes v. Waitkevitch*, 536 F.2d 469,

471 (1st Cir. 1976), and *State v. Gregory*, 192 Wn.2d 1, 22, 427 P.3d 621 (2018),[4] not for their precedential, on-point value, but for their statements recognizing the impact of racial discrimination on the integrity of the judicial process. We agree these cases recognize implicit and overt racial biases in the judicial system, but we do not agree that these cases stand for the proposition that defense counsel renders deficient performance for failing to move for change of venue in cases such as Clark's.

In *Batson v. Kentucky*, 476 U.S. at 93-94, the United States Supreme Court established a three-part test for determining whether the peremptory strike of a juror was racially motivated: (1) The defendant must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." (2) If the defendant makes a prima facie case, the burden shifts to the prosecutor to provide an adequate, race-neutral justification for the strike. *Batson*, 476 U.S. at 94. (3) If a race-neutral explanation is provided, the court must examine whether the "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96.

Clark relies on *City of Seattle v. Erickson* for our Supreme Court's holding that *Batson* protections guarantee a jury selection free from racial animus and that "our *Batson* protections are not robust enough to effectively combat racial discrimination during jury selection." 188 Wn.2d 721, 723, 398 P.3d 1124 (2017); *Erickson* held that a prima facie case of discrimination is present when "the sole member of a racially cognizable group has been struck from the jury."

---

[4] The *Gregory* court struck down Washington's death penalty as unconstitutional because it was "administered in an arbitrary and racially biased manner." 192 Wn.2d at 18-19.

188 Wn.2d at 734. But *Erickson* was about the peremptory strike of the only Black juror on the jury panel. 188 Wn.2d at 723. The court's holding was in the context of the *Batson* test for whether the striking of a juror was racially motivated and did not involve a change of venue. *Erickson*, 188 Wn.2d at 723-24. Although our Supreme Court discussed issues of racial bias and jury selection, it did not offer a solution to the situation where no Black people appear in the jury venire.[5] Thus, *Erickson's* holding that a prima facie case of discrimination is present when "the sole member of a racially cognizable group has been struck from the jury" does not apply here.[6] 188 Wn.2d at 734.

Finally, Clark cites *State v. Pierce*, 195 Wn.2d 230, 232, 455 P.3d 647 (2020) (*plurality*). In *Pierce*, the defendant's murder convictions were reversed because the trial court refused to inform the jury venire that there was no possibility of the death penalty and then allowed a Black juror to be peremptorily stricken based on a conversation about the death penalty. 195 Wn.2d at 232. Clark relies on our Supreme Court's statement that "[j]ury selection must be done in a fair

---

[5] Our Supreme Court has recently addressed jury bias by promulgating General Rule 37. That rule, adopted in 2018, seeks to "eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37.

Additionally, our Supreme Court has established the Minority and Justice Commission to identify and eradicate the effects of racial, ethnic, and cultural bias in our state court system. The Commission has a task force that has made several policy recommendations targeted at increasing the diversity of jury pools and jury diversity generally. *See* Minority and Justice Commission Jury Diversity Task Force 2019 Interim. Report.https://www.courts.wa.gov/subsite/mjc/docs/Jury%20Diversity%20Task%20Force%20In terim%20Report.pdf.

[6] Clark's reliance on *State v. Jefferson*, 192 Wn.2d 225, 242, 429 P.3d 467 (2018), a case also discussing a peremptory juror strike, fails for the same reason.

way that does not exclude qualified jurors on inappropriate grounds, including race." *Pierce*, 195 Wn.2d at 231-32; Br. of Appellant at 16.

Clark would have us blend *Berhe*, *Gregory*, *Erickson*, *Jefferson* and *Pierce* together, and from that mix of cases, distill a rule ensuring defense counsel must move for a change of venue to a county where there would be a "realistic chance of having [B]lack people in the jury venire." Br. of Appellant at 16-17.

We recognize the importance of having an unbiased judicial system and increasing jury diversity is an important step toward achieving that goal. But Clark does not cite to any case construing CrR 5.2(b)(2) and the meaning of "fair trial" in the context of implicit bias or jury selection. Furthermore, Clark does not explain what "realistic chance" or "realistic possibility" means in the context of racial makeup of a given county.[7] Despite the clear rule that "[a]

---

[7] The State poses a series of rhetorical questions on how this would work, practically, if we were to adopt such a rule:

> Do we just look to the racial composition of a county in making that determination? Do average venire sizes and response rates to jury summons matter? Does the racial composition of Clark County provide for a "realistic possibility," but still require a motion to change venue when a [B]lack person is not on the venire? To be effective, must all attorneys in counties in Division II, other than Pierce County, move to change venue to Pierce County in situations similar to Clark's? If, after a change of venue to Pierce County, the jury venire did not have any [B]lack people, would we presume the defendant received a fair trial? CrR 5.2(b)(2). If a defendant in Clark's position was charged and tried in Pierce County but no [B]lack people were part of the venire, would he proceed to have a "fair trial" or would his attorney have to move to change venue as well? CrR 5.2(b)(2). And if Clark's right to a fair trial or equal protection did not require a [B]lack person to be seated on the jury, how could the right to a *fair trial* require the "realistic possibility" of a [B]lack person on the jury venire? *Batson*, 476 U.S. at 85; *State v. Rhone*, 168 Wn.2d 645, 650-51, 229 P.3d 752 (2010) (citation omitted).

Br. of Resp't at 12-13.

criminal defendant has no constitutional right to a jury composed in whole, or in part, of persons of his or her own race," *Barajas*, 143 Wn. App. at 34, Clark claims that defense counsel is required to ensure that a jury venire is composed in whole, or in part, of persons of his or her own race.[8] This is a novel theory.

Because counsel's performance cannot be deficient for failure to raise a novel theory, and because counsel's actions appear on this record to be tactical, Clark has not shown that his counsel performed deficiently and his claim for ineffective assistance fails. Clark's defense counsel was not deficient when he did not move for a change in venue but instead successfully engaged the venire in a dialog about racism and implicit bias and extracted a commitment to ensure bias did not influence the verdict. We need not address prejudice. *Classen*, 4 Wn. App. 2d at 535. Thus, we hold that Clark did not receive ineffective assistance of counsel when his defense counsel did not move for a change of venue to a county with a different demographic makeup. We affirm Clark's convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

UNPUBLISHED TEXT FOLLOWS

Clark further argues that the prosecutor committed prosecutorial misconduct by improperly vouching for the victim. Clark also raises multiple, additional arguments in a

---

[8] Clark specifically argues that considering the "racially charged accusations in this case," his defense counsel was deficient for not recognizing the demographics of Clark County and moving to change venue to Pierce County. Br. of Appellant at 20.

Statement of Additional Grounds (SAG) for Review. He claims that (1) he was denied effective assistance of counsel based on statements defense counsel made during argument over motions in limine; (2) he was denied effective assistance based on defense counsel's closing argument; (3) he was denied effective assistance based on defense counsel's submission of a jury instruction concerning consent; (4) he was denied effective assistance for defense counsel's failure to cross-examine an expert witness; (5) he was denied effective assistance for defense counsel's failure to ask specific questions of the victim; (6) that the trial court erred when it admitted forensic evidence, the probative value of which Clark argues is substantially outweighed by its prejudice; (7) that the trial court erred when it instructed the jury on Clark's instruction concerning consent; and (8) that the prosecutor committed prosecutorial misconduct based on remarks made during sentencing hearing.

## ADDITIONAL FACTS

On the night of April 21-22 while engaging in consensual intercourse, Clark removed his penis from SV's vagina and, without asking or telling SV, inserted his penis into her anus and did not remove it despite SV's pleas to do so. After the assault, Clark instructed SV to retrieve a towel with which to wipe themselves. She complied, and Clark then fell asleep.

On the morning of April 22, Clark became upset about not getting enough bacon during breakfast and then later became enraged when he discovered his car had been towed from the apartment complex during the night. When SV refused Clark's request to pay for half the tow fee, Clark got so angry that he charged SV with his fists clenched and with one fist drawn back behind his head like he was going to punch her. SV became frightened and asked Clark to leave her apartment, but he refused.

SV then sent her daughter to a neighbor to call 9-1-1. Police officers arrived and arrested Clark. SV told police officers that she had been raped.

Officers then collected items from the apartment, including a towel used after the incident. The police transferred SV to the hospital, where she underwent a sexual assault exam; a nurse collected forensic evidence and placed it in a sexual assault evidence collection kit. The police transferred this kit and the other items they collected to a crime lab.

When the case went to trial in May 2019, issues of race were raised in pretrial hearings. During voir dire, Clark's counsel noted to the jury venire that there were no African-Americans in the room besides Clark. RP at 238. The record suggests the jury venire was not all Caucasian, as one juror on voir dire stated the room was "full of white and brown faces." 2 RP at 239.

The State made a motion in limine to exclude any testimony that SV posted on the dating website that she was interested in dating Black men, arguing that it was not relevant and could inflame the prejudice of the jury. When discussing this motion before the trial court, Clark's attorney stated that an interview with SV revealed information regarding how Clark and SV met, and he intended to ask SV questions about it to support his argument that Clark and SV were engaged in a sexual relationship. Clark's attorney also told the court that "Mr. Clark wanted me to clarify that he – himself – didn't specifically put out that he was seeking only a Caucasian person." 1 RP at 59. The question never came before the jury; neither SV nor Clark was asked about any physical attraction on the basis of race on direct or cross examination.

During the trial, the State called Ethan Smith, a forensic scientist employed by the State and an expert on bodily fluids. Smith was called to testify as to a substance found on the towel that was collected at the crime scene. The substance was identified as fecal matter. Smith

testified that he did not conduct DNA analysis on the towel, only a test for fecal matter, which was present on the towel. The State then called Trevor Chowen, another forensic scientist employed by the State, to discuss his examination of DNA samples obtained as part of a sexual assault evidence collection kit. During the State's direct examination of Chowen, the prosecutor elicited that not enough DNA was found on the samples to identify male DNA found in the kit. Chowen did not testify as to any tests done on the towel.

Both SV and Clark testified at the trial. Clark's defense counsel elicited information on SV's memory problems from a different witness before SV testified, but his defense counsel did not question SV on any medical or memory issues.[9]

The trial court gave multiple instructions to the jury. 5 RP at 835-46. Several are relevant here.

> Instruction 7: A person commits the crime of Rape in the Second Degree when he or she engages in sexual intercourse with another person by forcible compulsion.
>
> Instruction Number 8: Sexual intercourse means any penetration of the anus however slight by an object including a body part when committed on one person by another whether such persons are of the same or opposite sex or any act of sexual contact between persons involving the sex organ of one person and the anus of another whether such persons are of the same or opposite sex.
>
> Instruction Number 9: Forcible compulsion means physical force that overcomes resistance or a threat express or implied that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped.
>
> Instruction Number 10: Evidence of consent may be taken into consideration in determining whether the Defendant used forcible compulsion to have sexual intercourse.

---

[9] A police officer testified that when he interviewed SV in the hospital, she admitted to having epilepsy, which could cause her memory to diminish over time.

> Instruction Number 11: To convict the Defendant of crime of Rape in the Second Degree each of the following three elements of the crime must be proved beyond a reasonable doubt: (1) that on or about April 22nd, 2018 the Defendant engaged in sexual intercourse with [SV]; that the sexual intercourse occurred by forcible compulsion; and (3) that this act occurred in the State of Washington.

5 RP at 840-41. Clark's defense counsel requested instruction number 10.[10]

Several statements made by each party's counsel during closing arguments are relevant to this appeal. In context of describing the crime to the jury, the prosecutor stated:

> He continued forcing his penis into her anus while hol—holding down her upper body—holding her down hard enough that he left bruises. He continued forcing his penis into her anus while she was struggling to get him off of her while she was pushing against the headboard, breaking a nail.

> She wasn't trying to arouse him. [SV] was writhing in pain. She's not going to give consent and he was penetrating her. He continued to force his penis into her anus even though her words and her actions told the Defendant that she was not consenting to this act. *This is forcible compulsion. This is rape.*

> . . .

> And she didn't want to believe that somebody that she trusted—somebody that she allowed inside her home—somebody she'd allowed around her daughter—would do that to her—would violate her that way—would rape her. But that's what it was. *It was a rape. The law is clear about that.*

> Let's talk about some of the jury instructions. The Judge just read jury instruction number eleven which defines Rape in the Second Degree. It lists out the elements that the State has to prove to you beyond a reasonable doubt.

5 RP at 848-49 (emphasis added). The prosecutor then reviewed the elements of the crime and explained the facts above in context of the jury instruction.

During the next portion of the prosecutor's argument, Clark raised objections:

> Do you have an abiding belief that [SV] didn't consent?

---

[10] Instruction number 10 is identical to WPIC 18.25.

That when you see the scratches on the headboard – when you see the way that she testified – when you hear how everyone who interacted with her talked about her demeanor do you have an abiding belief that this was not consensual and that the Defendant forced it anyway? And if you believe [SV's] testimony beyond a reasonable doubt then you have enough evidence to convict the Defendant. Now you are the sole judges of credibility but I would submit to you that [SV's] testimony yesterday was genuine. And the evidence –

[Defense]: Objection Your Honor as to the characterization of the testimony given by a witness.

Judge: Overruled.

[Defense]: Okay.

[Prosecutor]: – the evidence would show that she was being truthful. She was not angry –

[Defense]: Again Your Honor I would reiterate my objection based on that particular word.

Judge: Overruled.

5 RP at 850-51. The prosecutor then continued to discuss how the evidence supported the conclusion that SV was credible. The prosecutor concluded that Clark "is guilty of Rape in the Second Degree. He is guilty of Tampering with a Witness and he is guilty of Assault in the Fourth Degree." 5 RP at 861.

During Clark's closing argument, his defense counsel appeared to attempt to reconcile differences in Clark's and SV's testimony.

But she says she was terrified about having been sexually assaulted the night before so for several hours the next day they were together in the house. She doesn't tell him to leave then. They had breakfast – breakfast is made – they share it together.

Yes he got a little upset about some bacon rations and things perhaps she said but otherwise it was good. In fact she even told you that they went back to sleep after breakfast and it was after he woke up and went out to go look at the vehicle is when he got mad.

So I'm not so sure how terrified this person was if they're willing to go back and – at the very least – sleep in the back room.

5 RP at 868-69.

At Clark's sentencing, the prosecutor stated, "Testimony in this case shows the Defendant is totally deluded his thinking and has a sense of entitlement. He had zero respect for [SV] that day and zero consideration for her as a person." 5 RP at 898.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Clark argues that the prosecutor committed misconduct during closing argument, depriving Clark of a fair trial. Clark argues that the prosecutor impermissibly vouched for SV's credibility, expressed her personal opinion about Clark's guilt, and improperly implied that to acquit, the jury had to find that SV had lied. The State argues that the prosecutor properly argued inferences from the evidence. We agree with the State.

A. *Legal Principles*

We review prosecutorial misconduct for an abuse of discretion. *State v. Song Wang*, 5 Wn. App. 2d 12, 30, 424 P.3d 1251 (2018). We review statements made in the context of the trial as a whole. *In re Pers. Restraint of Gentry*, 179 Wn.2d 614, 631, 316 P.3d 1020 (2014). That is, we view statements made "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

During closing argument, prosecutors have wide latitude to argue reasonable inferences from the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). It is not improper for a prosecutor to argue that a defendant is guilty of the crimes

16

charged when, viewed in the context of the entire argument, it is clear that the prosecutor is not expressing a personal opinion, but is arguing from the facts presented at trial.  *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006).  We presume a jury follows jury instructions in the absence of any evidence to the contrary.  *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 171-72, 410 P.3d 1142 (2018).

"In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial."  *Emery*, 174 Wn.2d at 756.  The defendant must first show that the prosecutor's statements are improper.  *Emery*, 174 Wn.2d at 759.  If the defendant establishes that the prosecutor made improper statements, then our standard of review depends on whether the defendant objected to a statement at trial.  *Emery*, 174 Wn.2d at 760.

"If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."  *Emery*, 174 Wn.2d at 760.  "Prejudicial error does not occur until such time as it is *clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion*."  *McKenzie*, 157 Wn.2d at 54 (emphasis in original) (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59, *review denied*, 100 Wn.2d 1003 (1983)).

If the defendant did *not* object at trial, we deem that the defendant has waived error, unless the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."  *Emery*, 174 Wn.2d at 760-61.  Where the defendant did not object, the defendant must meet a higher standard and show first that the prosecutor made improper statements, *then* must also show (1) that "'no curative instruction would have obviated

any prejudicial effect on the jury'" and (2) that the misconduct resulted in prejudice that "'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 759-61 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

B.      *Statement Objected to in Closing Argument*

Clark argues that the prosecutor committed prejudicial misconduct by vouching for SV's credibility. Specifically, Clark argues the prosecutor expressed a prejudicial, personal belief when she argued, "Now you are the sole judges of credibility but I would submit to you that [SV's] testimony yesterday was genuine." 5 RP at 851, Br. of Appellant at 24. We disagree that this statement was misconduct.

The portion of the prosecutor's statement to which Clark assigns error, in the context of the larger argument, is italicized below:

> That when you see the scratches on the headboard – when you see the way that she testified – when you hear how everyone who interacted with her talked about her demeanor do you have an abiding belief that this was not consensual and that the Defendant forced it anyway? And if you believe [SV's] testimony beyond a reasonable doubt then you have enough evidence to convict the Defendant. *Now you are the sole judges of credibility but I would submit to you that [SV's] testimony yesterday was genuine.* And the evidence –
>
> [Defense]: Objection Your Honor as to the characterization of the testimony given by a witness.
>
> Judge: Overruled.
>
> [Defense]: Okay.
>
> [Prosecutor]: – the evidence would show that she was being truthful. She was not angry –
>
> [Defense]: Again Your Honor I would reiterate my objection based on that particular word.
>
> Judge: Overruled.

5 RP at 851. The prosecutor then continued to discuss how the evidence supported the conclusion that SV was credible.

Clark relies on *State v. Sargent*, 40 Wn. App. 340, 343-44, 698 P.2d 598 (1985). In *Sargent*, Division I of this court held that the prosecutor committed prosecutorial misconduct when he stated to the jury, regarding the credibility of one of the witnesses, "I believe Jerry Lee Brown. I believe him." 40 Wn. App. at 343. The court held that the statement was an improper expression of personal opinion. *Sargent*, 40 Wn. App. at 343-44. But the language the prosecutor used here—especially in context—is distinguishable.

It is not "clear and unmistakable" that the prosecutor here was expressing a personal opinion. *McKenzie*, 157 Wn.2d at 54. Instead, the prosecutor couched the phrase "I would submit" in context of inferences from the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d at 704. Washington courts have consistently held that similar language in the context of inferences from the evidence is proper. *See, e.g.*, *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008) (holding that the prosecutor stating testimony "rang out clearly with truth" was presented in context of evidence and not a personal opinion); *State v. Robinson*, 189 Wn. App. 877, 894-95, 359 P.3d 874 (2015) (stating that a prosecutor who uses "we know" does not commit misconduct when she uses the phrase to draw inferences from the evidence); *State v. Hoffman*, 116 Wn.2d 51, 94-95 804 P.2d 577 (1991) (determining the prosecutor's use of the phrases "I think" and "I think the evidence shows" were not unfair assertions of personal opinions); *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (holding the prosecutor's use of "I would suggest" was not improper).

19

Thus, Clark does not show that this statement was improper. Accordingly, Clark cannot show that this statement was prosecutorial misconduct, thus, we need not address whether the prosecutor's statement resulted in prejudice.

C.      *Statements Not Objected to in Closing Argument*

Clark also argues that the prosecutor committed misconduct by expressing her personal opinion about Clark's guilt and by implying that the jury had to find that SV lied or was mistaken to acquit. We disagree.

Where the defendant did not object to statements in the trial court, the defendant must meet a higher standard on appeal and show first that the prosecutor made improper statements, *then* must also show (1) that "no curative instruction would have obviated any prejudicial effect on the jury" and (2) that the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." *Emery*, 174 Wn.2d at 759-61 (internal quotation marks omitted). We deem that the defendant has waived error, unless the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61; *see also* RAP 2.5(a), *Kalebaugh*, 183 Wn.2d at 583. In examining conduct, we "should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

There are two parts of the prosecutor's closing argument Clark now challenges for the first time on appeal. The first was the prosecutor's repeated statements calling Clark's actions "rape," and stating that the evidence shows that Clark was "guilty." Br. of Appellant at 25-26. In context of describing the crime to the jury, the prosecutor stated:

> He continued forcing his penis into her anus while hol – holding down her upper
> body – holding her down hard enough that he left bruises. He continued forcing

his penis into her anus while she was struggling to get him off of her while she was pushing against the headboard, breaking a nail.

She wasn't trying to arouse him. [SV] was writhing in pain. She's not going to give consent and he was penetrating her. He continued to force his penis into her anus even though her words and her actions told the Defendant that she was not consenting to this act. *This is forcible compulsion. This is rape.*

. . .

And she didn't want to believe that somebody that she trusted – somebody that she allowed inside her home – somebody she'd allowed around her daughter – would do that to her – would violate her that way – would rape her. But that's what it was. *It was a rape. The law is clear about that.*

Let's talk about some of the jury instructions. The Judge just read jury instruction number eleven which defines Rape in the Second Degree. It lists out the elements that the State has to prove to you beyond a reasonable doubt.

5 RP at 848-49 (emphasis added). The prosecutor then reviewed the elements of the crime and explained the facts above in context of the jury instruction. The prosecutor concluded that Clark "is guilty of Rape in the Second Degree. He is guilty of Tampering with a Witness, and he is guilty of Assault in the Fourth Degree." 5 RP at 861.

The second statement Clark claims is misconduct, is the prosecutor's argument that "if you believe [SV's] testimony beyond a reasonable doubt then you have enough evidence to convict the Defendant." Br. of Appellant at 29, 5 RP at 851.

1. *Improper Statements*

     a. *Statements Regarding Rape and Guilt*

Clark argues that the prosecutor's statements that "this is rape" and that "[Clark] is guilty" were improper. Br. of Appellant at 25-26. He argues that the prosecutor used the prestige of her office to sway the jury. We disagree.

21

Clark relies on *State v. Monday*, 171 Wn.2d 667, 677, 257 P.3d 551 (2011), to support his argument that the prosecutor's statements regarding rape and guilt constitute reversible misconduct. In *Monday*, our Supreme Court examined statements made during a murder trial where the prosecutor continually commented on the credibility of witnesses during examination, as well as in opening and closing arguments. 171 Wn.2d at 671-74. The *Monday* prosecutor called attention to the fact that the witnesses were Black, by referring to the police as "the po-leese," during their cross-examination, and told the jury that his years of experience taught him that "the word of a criminal defendant is inherently unreliable." 171 Wn.2d at 673. The prosecutor there went on to contend that many of the witnesses could not be relied on because "the code is black folk don't testify against black folk." *Monday*, 171 Wn.2d at 674.

None of the statements the prosecutor made here rise to the level of impropriety exhibited in *Monday*. As explained above, it is not improper for a prosecutor to argue that a defendant is guilty of the crimes charged when it is clear that the prosecutor is not expressing a personal opinion, but is arguing from the facts presented at trial. Here, it is clear from our review of the entire argument that the prosecutor was arguing from the evidence presented at trial and was not expressing a personal opinion. Accordingly, the first statement was not improper.

### b. Second statement

Clark argues that the prosecutor's statement that "if you believe [SV's] testimony beyond a reasonable doubt then you have enough evidence to convict the Defendant" improperly implied that the jury had to find that SV lied or was mistaken to acquit Clark. 5 RP at 851, Br. of Appellant at 29. We disagree.

22

Clark relies on *State v. Fleming*, 83 Wn. App. 209, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018, 936 P.2d 417 (1997). In *Fleming*, Division I of this court examined a prosecutor's statements regarding the victim's testimony in a rape case. 83 Wn. App. at 212-14. The court held "that it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." *Fleming*, 83 Wn. App. at 213. There, the prosecutor told the jury that to acquit "you would have to find either that [the victim] has lied about what occurred . . . or that she was confused." *Fleming*, 83 Wn. App. at 213. The prosecutor went on to explain that no evidence supported either of those theories. *Fleming*, 83 Wn. App. at 214. The court explained that the statements "improperly shifted the burden to the defendants to disprove the State's case" and were therefore flagrant and ill intentioned. *Fleming*, 83 Wn. App. at 214.

But *Fleming* is factually distinguishable. In that case, the prosecutor told the jury that it was required to find that the victim was lying to acquit. *Fleming*, 83 Wn. App. at 213. That was a misstatement of the law, and an improper statement of the burden of proof. Here, by contrast, the prosecutor told the jury to *convict* only if it *believed* the victim's testimony.

The prosecutor's statement here is more like that in *State v. Larios-Lopez*, 156 Wn. App. 257, 233 P.3d 899 (2010). In *Larios-Lopez*, the defendant challenged the prosecutor's statement that:

> In the end, if you believe this officer is telling the truth, and you believe him to an abiding belief, I have proven to you beyond a reasonable doubt that the defendant is guilty of this crime, and I ask you to find him guilty of assault in the third degree.

*Larios-Lopez*, 156 Wn. App. at 259. We distinguished this language from the language in *Fleming*. *Larios-Lopez*, 156 Wn. App. at 260-61. We held that the prosecutor's statements "did

not constitute a flagrant and ill-intentioned violation of the rules governing a prosecutor's conduct at trial." *Larios-Lopez*, 156 Wn. App. at 261. Thus, telling a jury "you must believe the victim to convict" is different than "you must believe the victim is lying to acquit."

The prosecutor's argument that if the jury had an abiding belief that act was not consensual it must convict was not an improper statement. Thus, Clark's argument that this statement is prosecutorial misconduct fails.

Clark has failed to show that any of the challenged comments constitute misconduct. Thus, his argument that any of these statements constitute prosecutorial misconduct fails. Accordingly, we need not address whether the statements resulted in prejudice.

2. *Cumulative Error*

Clark argues cumulative error shows prosecutorial misconduct. Clark relies on *State v. Walker*, 164 Wn. App. 724, 737, 265 P.3d 191 (2011), where we stated that "the cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect." But there, prosecutors engaged in multiple instances of improper conduct throughout the trial. *Walker*, 164 Wn. App. at 730-37. Because Clark cannot show that any of the prosecutor's statements were improper, this argument fails.

Clark cannot show that the statements made by the prosecutor were improper. Accordingly, we hold that the prosecutor did not commit misconduct.

II. STATEMENT OF ADDITIONAL GROUNDS

Clark filed a SAG in which he makes eight additional claims. He makes five claims of ineffective assistance of counsel, one claim of prosecutorial misconduct, and two claims of trial court error. Each claim fails.

A.     *Ineffective Assistance of Counsel*

Clark argues he received ineffective assistance of counsel for five different reasons. We disagree on each count.

We review a claim that a defendant was denied effective assistance of counsel de novo. *Sutherby*, 165 Wn.2d at 883. To demonstrate ineffective assistance, Clark must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *Linville*, 191 Wn.2d at 524 (citing *Strickland*, 466 U.S. at 688). The failure to demonstrate either prong ends our enquiry. *Classen*, 4 Wn. App. 2d at 535.

To demonstrate that defense counsel's performance was deficient, Clark must show the performance was not objectively reasonable. *Estes*, 188 Wn.2d at 458. We strongly presume counsel's performance was effective and reasonable. *Emery*, 174 Wn.2d at 755; *Kyllo*, 166 Wn.2d at 862. There is "no claim for ineffective assistance of counsel when the challenged action goes to a legitimate trial strategy or tactic." *Kolesnik*, 146 Wn. App. at 801.

1. *Defense Counsel's Statements During Motions in Limine*

Clark's first argument for ineffective assistance involves statements his attorney made during pretrial motions. Clark appears to argue that his attorney provided ineffective assistance when discussing Clark's and SV's on-line dating profiles. Clark appears to argue his attorney

advocated for SV's position and not Clark's and that the court was thereby biased against him on racial grounds.

The State made a motion in limine to exclude any testimony that SV posted on the dating website that she was interested in dating Black men, arguing that it was not relevant and could inflame the prejudice of the jury. When discussing this motion before the trial court, Clark's attorney stated that an interview with SV revealed information regarding how Clark and SV met, and he intended to ask SV questions about it to show that Clark and SV were engaged in a sexual relationship. Clark's attorney also told the court that "Mr. Clark wanted me to clarify that he – himself – didn't specifically put out that he was seeking only a Caucasian person." 1 RP at 59. The question regarding any attraction based on race never came before the jury; neither SV nor Clark was asked about any physical attraction on the basis of race on direct or cross examination.

Clark argues that his counsel's statement violated his Sixth Amendment right to present his own defense. *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). He reaches outside the record to argue that his counsel was not representing Clark's version of events. Clark does not show how his counsel's response to the motion in limine before the judge while explaining his trial strategy demonstrated deficient performance. *Linville*, 191 Wn.2d at 524. Moreover, defense counsel's statement was a reasonable trial tactic to persuade the court to deny the State's motion. *Kolesnik*, 146 Wn. App. at 801. For all these reasons, Clark's first claim for ineffective assistance fails.

2. *Defense Counsel's Statements During Closing Argument*

Clark argues that the manner in which defense counsel argued in closing arguments leaned towards accepting portions of SV's description of whether or not Clark and SV argued

over breakfast, rather than Clark's. Notwithstanding that this had nothing to do with the elements of the charged crimes, Clark argues that defense counsel stating that there was an argument over the "bacon rations" between Clark and SV contradicted his testimony and violated Clark's "constitutional right to control [his] own defense." 5 RP 868-69.[11]

Clark's reliance on *State v. Davis*, 141 Wn.2d 798, 860, 10 P.3d 977 (2000), is inapt. That case involved ineffective assistance based on a counsel's possible conflict of interest in representing another party. *Davis*, 141 Wn.2d at 860. Clark also relies on *In re Personal Restraint of Davis*, 152 Wn.2d 647, 676, 101 P.3d 1 (2004), to argue that his counsel equivocating over a portion of SV's version of events at breakfast following the night of the crime is tantamount to not objecting to being in shackles in the courtroom.

To the contrary, Clark's counsel's statement in closing was part of a broader strategy to cast doubt on SV's testimony. Accordingly, it was a legitimate trial strategy and Clark's second claim for ineffective assistance fails.

3. *Jury Instruction Number 10*

Clark argues he received ineffective assistance of counsel when his counsel requested inclusion of jury instruction number 10. We disagree.

Jury instruction number 10 stated, "Evidence of consent may be taken into consideration in determining whether the Defendant used forcible compulsion to have sexual intercourse." 5 RP at 841; WPIC 18.25. Clark's counsel requested this instruction because the crime of rape in

---

[11] During closing arguments, Clark's counsel stated: "Yes, she got a little upset about some bacon rations and things perhaps she said but otherwise it was good." 5 RP 868-69.

the second degree hinged on the element of consent. This jury instruction is identical to WPIC 18.25.

Clark cites to *State v. Lynch*, 178 Wn.2d 487, 309 P.3d 482 (2013), and *State v. Coristine*, 177 Wn.2d 370, 300 P.3d 400 (2013). He argues that these cases hold that WPIC 18.25 impermissibly shifts the burden of proof to the defendant in violation of the Fourteenth Amendment. And they so hold. *Lynch*, 178 Wn.2d at 496; *Coristine*, 177 Wn.2d at 376, 379-81. However, after our Supreme Court's decision in *Lynch*, the text of WPIC 18.25 was changed to its current version; it was the previous version that was problematic. *Compare State v. Knapp*, 11 Wn. App. 2d 375, 379, 453 P.3d 1006 (2019) *and Lynch*, 178 Wn.2d at 490; *State v. Imokawa*, 194 Wn.2d 391, 400-401, 450 P.3d 159 (2019); *see also State v. W.R., Jr.*, 181 Wn.2d 757, 763, 766, 336 P.3d 1134 (2014).[12]

Our Supreme Court explained:

> *W.R.* teaches, and the new WPIC recognizes, that so long as the burden is not shifted to the defendant in the instructions, the jury need not be instructed as to the State's burden to prove absence of a defense; it need only be specifically instructed on the essential elements of the crime.

*Imokawa*, 194 Wn.2d at 400–01. Accordingly, WPIC 18.25 now alerts the jury that it may take consent into consideration to negate the element of forcible compulsion in the crime of rape in the second degree, but that the burden is *not* shifted, contrary to what Clark argues. *W.R., Jr.*, 181 Wn.2d at 766.

---

[12] "Because the defense of consent necessarily negates the element of forcible compulsion, credible evidence of consent necessarily raises doubt as to the defendant's guilt." *W.R., Jr.*, 181 Wn.2d at 766.

Thus, reading the new WPIC 18.25 with the decisions in *W.R.* and *Imokawa*, the text of jury instruction number 10 may be proffered for a legitimate strategic purpose: to alert the jury to consider evidence of consent. Because his counsel's submission of the jury instruction was a legitimate trial strategy, Clark's third claim for ineffective assistance fails. *Kolesnik*, 146 Wn. App. at 801.

4. *Cross-Examination*

Clark argues that he received ineffective assistance when his trial counsel did not cross examine the State's expert witness Trevor Chowen to elicit information on the lack of DNA evidence connecting him to the crime, specifically the lack of DNA testing on a towel found at the scene. We disagree.

Chowen, a State forensic scientist, was called to discuss his examination of DNA samples obtained as part of a sexual assault evidence collection kit collected during the investigation. During direct examination, the prosecutor elicited that not enough DNA was found on the samples to identify male DNA found in the kit. Before Chowen was called, the State had called Ethan Smith, a forensic scientist and expert on bodily fluids. Smith was called to testify as to fecal matter found on a towel that was collected at the crime scene. Smith testified that he did not conduct DNA analysis on the towel, only a test for fecal matter. Chowen did not testify as to any tests done on the towel.

In *State v. Bander*, 150 Wn. App. 690, 720, 208 P.3d 1242 (2009), Division I of this court examined an ineffective assistance claim where the defendant argued that his trial counsel had failed to impeach the credibility of a witnesses on cross-examination. But the trial transcripts there revealed that the prosecutor elicited testimony from the witnesses on the very credibility

issues that Bander raised on appeal. *Bander*, 150 Wn. App. at 720. "Once this information was before the jury, Bander's trial counsel could have reasonably concluded that she either had no basis to address it further on cross-examination or that doing so would undermine her strategy for defending Bander." *Bander*, 150 Wn. App. at 720–21. Thus, Division I held that the defendant's claim of ineffective assistance failed. *Bander*, 150 Wn. App. at 721.

Clark's claim here fails for the same reason. The information that Clark raises in his SAG was already before the jury. Smith was called to testify as to the towel and on direct and cross examination revealed no DNA test was conducted. Chowen then testified as to the rest of the sexual assault evidence collection kit and stated on direct that no DNA match was processed. Accordingly, under *Bander*, Clark's fourth claim for ineffective assistance fails because his counsel could have reasonably concluded that not cross-examining was a legitimate trial strategy.

5. *Cross-Examination of the Victim*

Clark argues that he received ineffective assistance when his trial counsel failed to question and impeach the credibility of SV on her medical condition and related memory problems. We disagree.

First, Clark's argument here appears to be an effort to persuade us to weigh the evidence; he spends the majority of his argument outlining the discrepancies between his testimony and that of SV. But on appeal, we do not weigh evidence or make credibility determinations. *State v. Davis*, 176 Wn. App. 385, 396, n.10, 308 P.3d 807 (2013) (citing *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004)). Thus, to the extent Clark's SAG recites issues of credibility his argument is without merit.

Furthermore, Clark's defense counsel elicited information on SV's memory problems from another witness, before SV testified. Thus, the information was already before the jury. Therefore, under *Bander*, Clark's defense counsel's decision not to question SV on her medical history was a legitimate trial strategy and Clark's ineffective assistance claim fails.[13] *Bander*, 150 Wn. App. at 720–21.

B.      *Trial Court Error*

1. *Forensic Evidence*

Clark argues that the trial court erred in allowing *any* forensic evidence related to his crime. In particular, he argues that the trial court erred when it admitted a towel from the crime scene which contained fecal matter. He argues that the probative value of the forensic evidence was substantially outweighed by the danger of unfair prejudice under ER 403. We disagree.

First, although Clark objected at trial to admission of the towel, he did not object to the admission of the forensic evidence in the sexual assault evidence collection kit.[14] Thus, under RAP 2.5(a), appellate review is precluded because this is the first time Clark raised the issue.

Turning to the towel, we review a trial court's decision whether to admit evidence for abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). A trial court abuses its discretion when it misinterprets a rule or bases its decision on untenable grounds for

---

[13] Clark's defense counsel could have reasonably concluded he had no basis to address it further or may have felt an attack on what may have been a sympathetic witness would have worked against his trial strategy—especially given that SV was crying on the stand.

[14] Clark objected to admission of the towel and filed a motion in limine to exclude the testimony of forensic scientist Ethan Smith.

untenable reasons. *Diaz*, 175 Wn.2d at 462; *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017).

ER 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here the evidence showed that Clark used the towel that he would have excluded to wipe himself off with after he committed the crime. The towel contained fecal matter.

Clark maintains that the probative value of the towel was substantially outweighed by the danger it would inflame the racial prejudice and implicit bias caused by the use of the towel containing fecal matter in an interracial rape case.

The towel, and the other forensic evidence admitted, was highly probative of the elements of the crime. In its instructions to the jury, the trial court stated, "To convict the Defendant of crime of Rape in the Second Degree each of the following three elements of the crime must be proved beyond a reasonable doubt: (1) that on or about April 22nd, 2018 the Defendant engaged in sexual intercourse with [SV]. . . ." 5 RP at 841. In the instructions, the trial court defined "sexual intercourse" as "penetration of the anus however slight by an object including a body part when committed on one person by another." 5 RP at 840. The evidence of fecal matter on the towel Clark had wiped himself with, then, was directly probative of an element the State had to prove.

To the extent the towel and other forensic evidence was prejudicial, it was not to the level that it substantially outweighed its probative value. The trial court based its decision to admit on

grounds that the forensic evidence had a high probative value. See 1 RP at 75-77. Accordingly, Clark cannot show that the trial court abused its discretion when it admitted the towel and the other forensic evidence, and his argument fails.

2. *Jury Instruction Number 10*

Clark argues that the trial court erred when it admitted and read jury instruction number 10. We disagree.

Clark did not object to the jury instruction. In fact, his counsel submitted it. "Under the invited error doctrine, a defendant 'may not request an instruction and later complain on appeal that the requested instruction was given.'" *State v. Ortiz-Triana*, 193 Wn. App. 769, 776-77, 373 P.3d 335 (2016) (quoting *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (citation omitted)). Thus, under RAP 2.5(a) and the invited error doctrine, appellate review is precluded because this is the first time Clark raised the issue. *See Kyllo*, 166 Wn.2d at 861.

C. *Prosecutorial Misconduct*

Clark argues that the prosecutor committed prosecutorial misconduct when she stated in the sentencing hearing that "[t]estimony in this case shows the Defendant is totally deluded his thinking and has a sense of entitlement. He had zero respect for [SV] that day and zero consideration for her as a person." 5 RP at 898, SAG at 33-34. He appears to argue that this statement deprived him of a fair sentencing.[15] We disagree.

---

[15] Clark specifically states that the statement deprived him of a "fair trial" based on *State v. Belgarde*, 110 Wn.2d 504, 755 P.2d 174 (1988). SAG at 35.

Clark did not object to the prosecutor's statement during the sentencing hearing, so he is held to the higher standard. *See Emery*, 174 Wn.2d at 759-61. He cannot show that the statement was improper or that it affected his sentence.

Here, the prosecutor again argued from the evidence, which is not an improper argument, thus Clark cannot show that the prosecutor's statement was improper. See 5 RP at 897-98. Moreover, he cannot show that it had any likelihood of affecting his sentence. The trial court made no reference to this statement when sentencing Clark, so it appears the court did not take it into account during sentencing. Accordingly, Clark's claim of prosecutorial misconduct fails.

### III. CONCLUSION

Clark's counsel did not perform deficiently and his claim for ineffective assistance fails. Accordingly, we hold that Clark did not receive ineffective assistance of counsel when his defense counsel did not move for a change of venue to a county with a different demographic makeup.

Clark also cannot show that the objected-to statement in the prosecutor's closing argument was prosecutorial misconduct. Similarly, he cannot show that the statements made by the prosecutor that were not objected to were either improper. Thus, we hold that the prosecutor did not commit misconduct.

No. 53771-1-II

Turning to the SAG, Clark cannot show that he received ineffective assistance of counsel. He does not show that the trial court erred. He also does not show that the prosecutor's statements during the sentencing hearing were improper. Accordingly, he cannot show prosecutorial misconduct. Thus, we affirm.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Glasgow, J.