[No. 11366-3-III.   Division Three.   December 14, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTONIO NEGRETE, *Appellant.*

*Antonio Negrete,* pro se, and *Hugh M. Spall,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Steven R. Keller, Deputy,* for respondent.

COOPER, J.* — Antonio Negrete was convicted by jury of delivery of a controlled substance, cocaine. The court im-

*Judge Michael E. Cooper is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

posed an exceptional sentence based upon the amount of cocaine delivered, the amount of cocaine promised, and evidence of Mr. Negrete's high position in the drug distribution hierarchy. Mr. Negrete challenges the conviction, contending prosecutorial misconduct and an evidentiary error deprived him of a fair trial. He also challenges the exceptional sentence, contending the court's reasons are not supported by the record and the length is clearly excessive. We affirm.

On June 19, 1990, Sunnyside Police Detective Darrell Merry and undercover officer Anthony Valdez conducted a sting operation targeting Mr. Negrete. Gloria Lopez, a confidential informant working with Officer Valdez, had arranged for him to buy an ounce of cocaine from Mr. Negrete outside the Skunk Tavern after 9 p.m. at an agreed price of $750. Before they took up their positions, Detective Merry gave Officer Valdez $760 "buy" money, which he recorded. Detective Merry photocopied the money then placed checkmarks on the photocopy corresponding to the bills he gave Officer Valdez, so that he could keep track of the buy money without marking the bills. The checkmarked photocopy was admitted into evidence over defense objection.

Officer Valdez and Ms. Lopez waited for Mr. Negrete in the Skunk Tavern parking lot. Just before 9:30 p.m., Mr. Negrete arrived in his black Camaro, met them, and asked Officer Valdez if he had the money. Officer Valdez replied that he did and asked Mr. Negrete if he had the cocaine. An exchange was made: Officer Valdez handed over $760 and Mr. Negrete handed over the cocaine.[1] Officer Valdez then asked for and received $10 in change, since the agreed purchase price was $750. Officer Valdez gave the bust signal, yelled "Cops, cops", put the cocaine in his pocket, and ran from the area. Ms. Lopez also ran away. The arrest team proceeded into the parking lot and Detective Merry arrested Mr. Negrete. Detective Merry testified he recovered the $760 buy money from Mr. Negrete's pocket in a search incident to

---

[1] The cocaine weighed 26.6 grams whereas an ounce contains approximately 28.4 grams.

the arrest. Ms. Lopez acknowledged she was paid $150 for the bust and also admitted she had one prior drug conviction.

Mr. Negrete denied selling cocaine to Officer Valdez. He testified Ms. Lopez came to his restaurant on the day he was arrested and asked for a pound of "barbacoa" (barbecue meat), but that there was no conversation about either cocaine or meeting at the Skunk Tavern. He testified he went to the tavern to play pool and talk with friends after closing his restaurant. When he arrived he saw Ms. Lopez in the parking lot talking with a man. He testified she asked him if he could at least lend her $10 since he had not given her the "barbacoa". Mr. Negrete testified he gave her the money; her male companion then yelled "the police" and they ran; and the police arrived and arrested him. He testified he never spoke with Ms. Lopez' male companion. He also testified the $760 the police took out of his pocket was his own money.

Maria Gonzales, Mr. Negrete's cook at the restaurant, testified she heard Ms. Lopez ask him for a pound of "barbacoa" in the kitchen the day he was arrested, but she did not hear any conversation about drugs or a meeting at the Skunk Tavern.

Before trial, a CrR 3.5 hearing was held to determine whether a statement Mr. Negrete allegedly made to Officer Valdez was admissible. The officer testified that immediately after the transaction, but before his arrest, Mr. Negrete indicated he could supply up to 3 kilos of cocaine, with delivery of the first kilo as early as the following Monday. Mr. Negrete disputed making any statement, but he did not testify at the hearing and presented no contradictory evidence. The court found the facts were undisputed, the content of the statement was as Officer Valdez testified and Mr. Negrete made the statement voluntarily. The court ruled, however, that the statement could not be used in the State's case in chief although it could be used in rebuttal under appropriate circumstances. The statement was not mentioned or admitted into evidence at trial.

The jury convicted Mr. Negrete as charged. The court imposed a 60-month exceptional sentence based, in part, upon the testimony elicited at the CrR 3.5 hearing.[2] Because of the size of the 1-ounce sale and the agreement to sell kilo quantities in the future, the court concluded that under RCW 9.94A.390(2)(d) the offense was a major violation of the Uniform Controlled Substances Act (VUCSA).[3] Mr. Negrete appeals the conviction and the exceptional sentence.

Mr. Negrete first contends prosecutorial misconduct requires reversal because it deprived him of effective assistance of counsel and created a substantial likelihood that the verdict was affected. During closing argument, in response to defense counsel's characterization of undercover Officer Valdez as a "trained liar" and confidential informant Ms. Lopez as an individual paid $150 per bust to "frame people", the prosecutor stated in rebuttal:

> I have listened with great interest to the comments of [defense counsel]. Two things come to mind: I have never heard so much speculation in my entire life in going into facts that weren't even presented into evidence. And the second is, *he is being paid to twist the words of the witnesses by Mr. Negrete.*

(Italics ours.) Defense counsel objected on the basis the prosecutor was arguing facts not in evidence. The trial court sustained the objection. Neither a curative instruction nor a mistrial was requested.

---

[2]The court's first finding in support of the exceptional sentence states:

"On June 19, 1990, the defendant Antonio Negrete sold one ounce of cocaine to Officer Valdez for Seven Hundred Fifty Dollars ($750.00). After the ounce delivery,. Officer Valdez asked if he could buy another ounce. The defendant, Antonio Negrete, told Officer Valdez he could deliver up to three kilos of cocaine and agreed to deliver one kilo of cocaine to [the] Officer on the following Monday."

[3]RCW 9.94A.390(2)(d) specifies the following circumstances may identify an offense as a major VUCSA:

"(ii) The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; or
". . . .

"(iv) The circumstances of the current offense reveal the offender to have occupied a high position in the drug distribution hierarchy;"

■ To determine whether the prosecutor's comment violated Mr. Negrete's right to a fair trial, this court must decide whether the comment was in fact improper and, if so, whether the remark was so flagrant and ill intentioned that it was prejudicial beyond cure. *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). The burden of proving reversible prejudice rests with the defendant. *State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986). Reversal is not required unless there is a substantial likelihood that the argument affected the jury's verdict. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 1363 (1993).

■ We agree the remark was improper. *See United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990); *Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983), *cert. denied*, 469 U.S. 920 (1984). However, it was not irreparably prejudicial. Defense counsel's failure to move for a curative instruction or a mistrial at the time strongly suggests the argument did not appear so in the context of the trial. *State v. Swan, supra* at 661. Moreover, any prejudice was minimized by the trial court's instructions to the jury.[4] *See State v. Rice*, 120 Wn.2d 549, 572, 844 P.2d 416 (1993). Considering the strength of the State's case against him, and the isolated nature of the prosecutor's remark, Mr. Negrete has not established a substantial likelihood that the remark affected the jury's ver-

---

[4]The court instructed the jury:

"The only evidence you are to consider consists of the testimony of witnesses and the exhibits admitted into evidence. . . .

". . . .

"The attorneys' remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence. Disregard any remark, statement or argument that is not supported by the evidence or the law as stated by the court."

dict. The prosecutor's argument, although improper, therefore did not deprive Mr. Negrete of a fair trial.

■ Mr. Negrete next contends the court deprived him of a fair trial by improperly admitting into evidence a photocopy of the money used by the undercover officer to buy the cocaine. Citing ER 1003, he argues it was unfair to admit the duplicate instead of the original buy money because there was no testimony that anyone compared the cash taken from him with the exhibit.[5] His point is not well taken. Because the bills themselves were not marked, the checkmarked photocopy is the *original* record of the bills that were issued to Officer Valdez by Detective Merry. Therefore, it was the best evidence and the court did not err in admitting it.[6]

In his pro se brief, Mr. Negrete contends the trial judge improperly conveyed his opinion of Mr. Negrete's guilt while instructing the jury. The contention is without merit. The passage he quotes consists of comments made by his counsel during closing argument, not comments of the trial judge.

Finally, Mr. Negrete contends the court erred by imposing the exceptional sentence. He argues the court's conclusion this was a major drug offense is not supported by substantial evidence because (1) delivery of 1 ounce of cocaine is not an atypical drug transaction in the Sunnyside area, nor does it prove he occupies a high position in the drug distribution hierarchy, and (2) the court could not consider the testimony from the CrR 3.5 hearing that Mr. Negrete agreed to deliver up to 3 additional kilos. RCW 9.94A.370(2).[7] Mr. Negrete

---

[5] Detective Merry testified without contradiction that he recovered all of the $760 buy money from Mr. Negrete's pocket. Defense counsel made no attempt to ascertain whether the detective merely assumed the cash was the same or actually compared it to the list.

[6] To the extent Mr. Negrete is challenging the credibility of Detective Merry, not the admissibility of the photocopy, we decline to address the issue. It is not properly before us.

[7] RCW 9.94A.370(2) limits the sentencing court to information "admitted, acknowledged, or proved in a trial or at the time of sentencing." The court cannot consider any material facts disputed by the defendant without granting an

also argues the 60-month term of confinement is clearly excessive.

The court made three factual findings in support of its conclusion the offense was a major drug violation justifying an exceptional sentence: (1) the 1 ounce of cocaine delivered by Mr. Negrete is a quantity substantially larger than for personal use, which is typically 1 gram or less, (2) the current offense also involved an attempt and/or agreement to deliver an additional 1 to 3 kilos of cocaine, and those quantities are substantially larger than for personal use, and (3) the circumstances of the current offense establish Mr. Negrete occupies a high position in the drug distribution hierarchy. All three reasons are statutory aggravating factors, the first two encompassed by RCW 9.94A.390(2)(d)(ii) and the third by RCW 9.94A.390(2)(d)(iv).

To reverse a sentence outside the standard range, the reviewing court must find: (a) the reasons supplied by the sentencing judge are not supported by the record, as they are clearly erroneous, or those reasons given do not justify an exceptional sentence, as a matter of law; or (b) the sentence was so clearly excessive or lenient as to constitute an abuse of discretion. *State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990); *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986); *State v. Oxborrow*, 106 Wn.2d 525, 530-31, 723 P.2d 1123 (1986).

Here, the court's first reason is supported by trial testimony establishing Mr. Negrete delivered 26.6 grams of cocaine, almost 1 ounce, and sentence hearing testimony establishing 1 gram or less as the typical amount for personal use. The size of the transaction by itself justifies an exceptional sentence. RCW 9.94A.390(2)(d)(ii).

The court's second and third reasons supporting the exceptional sentence are based primarily on the CrR 3.5 testimony of Officer Valdez. At sentencing, the State offered the CrR 3.5 hearing testimony and the court's findings of fact and

evidentiary hearing on the point and requiring proof of the disputed facts at the hearing by a preponderance of the evidence.

conclusions of law from that hearing as proof that Mr. Negrete agreed to sell Officer Valdez additional large amounts of cocaine. Mr. Negrete denied making the statement. The court then held an evidentiary hearing at sentencing and Mr. Negrete testified that he never spoke to Officer Valdez. Officer Valdez did not testify. Based upon the combination of the CrR 3.5 findings and the sentencing hearing testimony, the court found the State had proved Mr. Negrete made the statement to Officer Valdez. Mr. Negrete argues the State did not meet its burden of proof. We agree. Consideration of the CrR 3.5 testimony was improper.

■ The purpose of a CrR 3.5 hearing is to determine the admissibility of a statement of the accused. The focus is on the voluntariness of the statement, not on its contents or the culpability of the accused. *See State v. Wolfer*, 39 Wn. App. 287, 291-92, 693 P.2d 154 (1984), *review denied*, 103 Wn.2d 1028 (1985). By relying on the testimony, findings and conclusions of the CrR 3.5 hearing, which focused on the circumstances surrounding the statement and not its content, the sentencing court did not give Mr. Negrete an adequate opportunity to contest the subject matter of the statement which he disputes he made.

The court's second and third reasons do not support the exceptional sentence. The finding that the offense involved an attempt and/or agreement to deliver additional large quantities of cocaine is based entirely on the improperly considered CrR 3.5 testimony; therefore, it is clearly erroneous.[8] The finding that the defendant occupied a high position in the drug distribution hierarchy is similarly defective. While there is evidence that Mr. Negrete sold almost an ounce of exceptionally pure and uncut cocaine, indicating that he was not far removed from the source, the basis of the court's determination that he was a high level dealer was the CrR 3.5 testimony.

---

[8]Even if Mr. Negrete's statement was properly considered, it was not evidence of an agreement and/or an attempt to deliver up to 3 additional kilos of cocaine. Rather, the statement was more like an offer. There was no discussion of price and no arrangements were made for delivery. Moreover, there was definitely no "attempt" as that term is used in criminal law.

■ Although two of the court's three reasons for imposing an exceptional sentence are invalid, remand for resentencing is not necessary because the court explicitly indicated it would impose the same sentence for any one of the reasons standing alone. *State v. Barnes*, 117 Wn.2d 701, 712, 818 P.2d 1088 (1991); *State v. Dunaway*, 109 Wn.2d 207, 219-20, 743 P.2d 1237, 749 P.2d 160 (1987).

Nor is the sentence clearly excessive. Taking Mr. Negrete's criminal history into account, the standard range for the offense is 26 to 34 months and the maximum term is 10 years. The court imposed a sentence of 60 months, a term exactly double the midrange and one-half of the maximum. There are many cases upholding exceptional sentences of double the presumptive range, or more;[9] the court did not abuse its discretion.

The judgment and exceptional sentence are affirmed.

THOMPSON, C.J., and SWEENEY, J., concur.

Review denied at 123 Wn.2d 1030 (1994).

---

[9]*See,* for example, *State v. Mejia*, 111 Wn.2d 892, 766 P.2d 454 (1989); *Oxborrow*, at 531; *State v. Caldera*, 66 Wn. App. 548, 552, 832 P.2d 139 (1992).