## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

MICHAEL DENNIS MCMAHON,

Appellant.

No. 56660-5-II

DIVISION TWO

UNPUBLISHED OPINION

BIRK, J.* – Michael McMahon appeals his convictions for three counts of first degree rape of a child, two counts of first degree child molestation, and one count of attempted second degree rape of a child. He alleges evidentiary error, prosecutorial misconduct, and sentencing error. The State concedes the sentencing error. We affirm McMahon's convictions, but accept the State's concession and remand for resentencing.

I.

McMahon is KM's adoptive father. McMahon and KM's mother married in 1994, when KM was four years old. McMahon and KM's mother have four additional children together.

In 2015, KM reported to police in Texas that McMahon had sexually abused her as a child when the family lived in Vancouver, Washington. Following an investigation, in 2018 the State charged McMahon with three counts of first degree rape of a child, three

---

* Judge Birk is serving in Division II of this court pursuant to RCW 2.06.040.

counts of first degree child molestation, and one count of attempted rape of a child in the first degree.

A.

At trial, KM testified that when she was a young child she would lay in bed with her mother and McMahon. After her mother got up, McMahon would touch her vagina and have her touch his penis. She testified this happened consistently for a year. KM also testified about taking showers with McMahon and that he would put his penis inside her mouth. This happened more than once.

KM testified that when she was in kindergarten, she and McMahon would go to Dairy Queen about once a week and McMahon would pull his truck over in a remote area and have KM put her mouth on his penis. KM also testified that she would go with McMahon to his office and he would have her put her mouth on his penis in the elevator.

KM testified that McMahon had an office in their home and he would have KM come into his office and watch pornography with him. McMahon would then touch KM on her vagina while they watched pornography. KM recalled an incident on the living room floor where McMahon tried to put his penis inside her vagina. She told him that it hurt and, after trying one more time, he stopped.

KM testified that she told her mother about the abuse in 2011. She claimed that McMahon then told her it was her fault and that she was going to ruin the family if she reported it. In 2015, KM decided to report the abuse to the authorities because she was worried her mother was not protecting her younger siblings.

Dr. Kimberly Copeland, a pediatrician with experience working with cases of child abuse or allegations of child abuse, testified for the State. McMahon had previously filed a motion in limine to exclude her testimony under ER 403 because it would confuse the jury because Dr. Copeland had not physically examined KM. The trial court allowed her to testify. The trial court ruled that McMahon would have a standing objection to Dr. Copeland's testimony.

Dr. Copeland testified that when adults report childhood sexual abuse, a physical examination generally does not show evidence of abuse because of the time that has elapsed since the abuse. She testified that studies have shown that penetrative sexual assault of children results in physical findings in a medical examination only about four to five percent of the time. Dr. Copeland testified that she would not expect to see any injuries if abuse happened 10 to 15 years before the examination and the abuse was primarily touching and minor penetration. When asked about delayed disclosure, Dr. Copeland testified that it was not uncommon and that there were many variables as to why a child may wait to report abuse.

KM's mother testified for the defense. She testified that during the time KM alleged she was abused, McMahon was never alone in the house with KM, never drove her places in his car, and never took her to work. 2RP 653-54.

McMahon also testified, denying ever abusing KM. He testified that KM made the abuse allegations after he and KM's mother cut off KM's financial support in 2014.

3

B.

During closing arguments, the prosecutor told the jury that the State has the burden of proving each of the elements of the charged crimes beyond a reasonable doubt. The prosecutor went through each charge and told the jury, "So, ladies and gentlemen, if you believe [KM], every single one of the elements we just talked about is met. If you believe [KM], then [McMahon] is guilty of all counts. So how do we know [KM] is telling the truth? That comes down to credibility." The prosecutor continued, "You do not need corroboration to believe [KM] . . . . If you believe [KM], then [McMahon] is guilty."

In rebuttal, the prosecutor told the jury that KM had no motive to lie and then discussed the pros and cons of testifying. This was ostensibly responsive to McMahon's closing argument, consistent with his denial that any abuse had occurred, that the jury should not believe KM's testimony, as McMahon's counsel argued in summary, "there are lots of reasons to doubt [KM's] constructive fiction." Discussing whether KM had reason to lie, the prosecutor stated, "Let's go with the cons. That loss of time and energy. It's been six years since she reported. Six years of police interviews, defense attorney interviews, court hearings, flying out from Texas, and finally testifying in front of strangers about the abuse." Later, the prosecutor stated that KM "continues to suffer today by being alienated from her family for sticking to her truth and having to deal with this legal process that's dragged on for six years." McMahon did not object at any time during the State's closing argument.

4

C.

The jury found McMahon guilty of three counts of first degree rape of a child (from 1994 to 2001), two counts of first degree child molestation, and one count of the lesser-included offense of attempted second degree rape of a child.  The jury found McMahon not guilty of attempted first degree rape of a child and not guilty of one of the counts of first degree child molestation.

At sentencing, the trial court relied on a seriousness level of XII for the first degree rape of a child convictions, with a standard range of 240 to 318 months.  The court imposed a total sentence of 240 months.

McMahon appeals his judgment and sentence.

II.

McMahon contends (A) the trial court erred by admitting Dr. Copland's testimony because her testimony was irrelevant and not helpful to the jury; (B) the prosecutor committed misconduct during closing arguments by telling the jury that it was required to return a guilty verdict if it believed KM, and by commenting on McMahon's Sixth Amendment rights to a jury trial and to confront witnesses; and (C) the trial court used the wrong seriousness level for first degree rape of a child when sentencing him.

A.

We review a trial court's decision to admit expert testimony for an abuse of discretion. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).  Similarly, we review a trial court's application of ER 403 for an abuse of discretion.  *State v. Barry*, 184 Wn. App. 790, 801-02, 339 P.3d 200 (2014).  An abuse of discretion occurs only when the

court's decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009)

Expert testimony is admissible if "(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact." *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984). "Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *State v. Groth*, 163 Wn. App. 548, 564, 261 P.3d 183 (2011). Courts interpret possible helpfulness broadly and favor admissibility in doubtful cases. *Id*.

McMahon frames the issue on appeal as whether Dr. Copeland's testimony was helpful to the jury under ER 702. However, McMahon's argument is not aimed at whether Dr. Copeland's testimony about the incidence of physical injury on examination following sexual assault and delayed reporting of abuse were "helpful" in the sense of being beyond the common knowledge of the average layperson. Rather, McMahon argues these opinions did not tend to establish any element of the State's case given the absence of any examination, and therefore any examination with negative findings needing to be explained, and given most counts being premised on acts not likely to cause observable physical injury. McMahon's argument fits more neatly into the framework he argued in the trial court, ER 403, in that he maintains any probative value of the opinions was at best slight such that on balance they tended only towards unfair prejudice. Under ER 403, evidence is properly excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

In *Kirkman*, an expert testified about his examination of a child victim of sexual assault. 159 Wn.2d at 931. He testified that it is the "norm" to find "no physical evidence of sexual conduct." *Id.* at 931-32. Our Supreme Court held that the testimony was "particularly relevant" to help the jury address the apparent discrepancy between the child's allegations of rape and the lack of medical evidence. *Id.* at 933.

This case concerns a significant amount of time between KM's report and the last alleged sexual incident. McMahon argued in his motion in limine that Dr. Copeland had not examined KM, so her testimony would confuse the jury. Dr. Copeland then explained at trial that a physical examination was not likely to show physical injury given the time between the alleged abuse and the disclosure. This information was probative because it explained why the State did not offer physical evidence of abuse. This provides tenable grounds to allow the evidence.

We hold that the trial court did not abuse its discretion in allowing Dr. Copeland to testify regarding physical examinations of adults who report childhood abuse.

B.

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). When the defendant fails to object at trial, we apply a heightened standard of review requiring that the defendant must also show that the prosecutor's misconduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Id.* at 709 (alterations in original) (quoting *State v. Loughbom*, 196 Wn.2d

64, 70, 470 P.3d 499 (2020)). "In other words, the defendant who did not object must show the improper conduct resulted in incurable prejudice." *Zamora*, 199 Wn.2d at 709 (emphasis omitted).

During closing argument, it is improper for a prosecutor to misstate the State's burden of proof. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). It is also improper for a prosecutor to misstate the jury's role during deliberations. *State v. Crossguns*, 199 Wn.2d 282, 297, 505 P.3d 529 (2022). For example, a prosecutor cannot "ask the jury to decide who was telling the truth." *Id.* " 'The jury's job is not to determine the truth of what happened . . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.' " *Id*. at 298 (alteration in original) (quoting *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012)).

The Sixth Amendment provides a criminal defendant with the right to a jury trial and to confront witnesses. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 854-55, 456 P.3d 869(2020). A prosecutor may not comment on a defendant's exercise of his or her Sixth Amendment rights. *See State v. Sundberg*, 185 Wn.2d 147, 153, 370 P.3d 1 (2016).

Prosecutors have wide latitude in closing argument to argue reasonable inferences from the evidence at trial, including evidence regarding the credibility of witnesses, but their argument must not misstate the applicable law. *Crossguns*, 199 Wn.2d at 296-97. Defense counsel's failure to move for a curative instruction or a mistrial for an allegedly improper remark, "strongly suggests the argument did not appear [irreparably prejudicial] in the context of the trial." *State v. Negrete*, 72 Wn. App. 62, 67, 863 P.2d 137 (1993).

Here, the prosecutor explained the burden of proof, and went through the elements of each charge. The prosecutor then stated, "[H]ow do we know [KM] is telling the truth? That comes down to credibility." The prosecutor continued, "You do not need corroboration to believe [KM]. . . If you believe [KM], then [McMahon] is guilty. In context, the prosecutor was arguing that given the elements of the charges that were not the focus of dispute—namely Washington situs, McMahon's and KM's relative ages, and KM's age at the time of the charged conduct—belief in KM's statements that the charged acts occurred would lead to the conclusion that "every single one of the elements" of the charged conduct would be "met." The context of the argument shows that the prosecutor did not suggest that the jury could substitute the choice whether to believe KM in place of finding each element of the charged crimes beyond a reasonable doubt.

In rebuttal, the prosecutor told the jury that KM had no motive to lie and then discussed the pros and cons of testifying. The prosecutor stated, "Let's go with the cons. That loss of time and energy. It's been six years since she reported. Six years of police interviews, defense attorney interviews, court hearings, flying out from Texas, and finally testifying in front of strangers about the abuse." Later, the prosecutor stated that KM "continues to suffer today by being alienated from her family for sticking to her truth and having to deal with this legal process that's dragged on for six years. On appeal McMahon portrays these arguments as commentary on McMahon's Sixth Amendment right to trial and to confront witnesses. The context shows that the challenged rebuttal statements were in response to McMahon's closing argument that KM's accusations of abuse were "fiction." The context of the rebuttal argument was that a conclusion that KM had

9

fabricated the accusations of abuse was not likely given the burdens KM's report created for her and the absence of any counterbalancing advantage.

These comments do not amount to a misstatement of the State's burden of proof or the jury's role in deciding credibility. Additionally, pointing out that it was not easy for KM to testify to such a difficult subject matter is not an improper comment on McMahon's Sixth Amendment rights. But even if these statements were improper, McMahon did not object. And he has failed to show that an instruction could not have cured any prejudice. Had McMahon objected, " 'the court could have properly explained the jury's role and reiterated that the State bears the burden of proof and the defendant bears no burden. Such an instruction would have eliminated any possible confusion and cured any potential prejudice stemming from the prosecutor's improper remarks.' " *Crossguns*, 199 Wn.2d at 300 (quoting *Emery*, 174 Wn.2d at 764).

We hold that McMahon's prosecutorial misconduct claim fails.

C.

Between 1994 and 1997, the seriousness level for first degree rape of a child was XI. Former RCW 9.94A.320 (Table 2) (1990). In 1997, the seriousness level changed to XII. Former RCW 9.94A.320 (Table 2) (1997). The trial court imposed a sentence for McMahon's three counts of first degree rape of a child based on a seriousness level of XII for the entire charging period of 1994 to 2001. The State concedes error. We accept the State's concession and remand for resentencing with the correct seriousness level. *See State v. Gurrola*, 69 Wn. App. 152, 158-59, 848 P.2d 199 (1993) (remanding for

resentencing because seriousness level for first degree rape of a child was increased in the course of the charged actions).

IV.

Because McMahon fails to show evidentiary error or prosecutorial misconduct we affirm his convictions. We accept the State's concession of sentencing error and remand for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Birk, J.

We concur:

_____
Glasgow, C.J.

_____
Che, J.