# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56445-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| WILLIAM LEROY BURCH, III, | |
| Appellant. | |

MAXA, J. – William Burch appeals his convictions of two counts of second degree rape, two counts of third degree child rape, and two counts of first degree incest. The convictions arose out of a disclosure that Burch's adopted daughter DB made when she was 21 years old. DB told her mother that Burch had raped her from the time she was 14 years old until she was 18 years old.

We hold that (1) as the State concedes, the State failed to prove an additional element included in the to-convict instruction for first degree incest and therefore those convictions must be dismissed; (2) Burch's prosecutorial misconduct claims regarding statements made in closing argument fail; and (3) Burch did not receive ineffective assistance of counsel when defense counsel failed to seek reconsideration of the cross-examination ruling. Accordingly, we reverse Burch's first degree incest convictions and remand for the trial court to dismiss those convictions with prejudice and for resentencing, but we affirm Burch's remaining convictions.

FACTS

*Background*

Burch and Debra Burch were married for 28 years. They have five children together – the oldest and youngest are their biological children and the middle three are adopted.

In October 2018, DB – the oldest adopted child, who was then 21 – disclosed to Debra[1] that Burch had raped her from the time she was 14 years old until she was 18 years old. TB – one of the younger adopted children – had also made allegations about Burch groping her.

The State charged Burch with six counts that listed DB as the victim: two counts of second degree rape, two counts of third degree child rape, and two counts of first degree incest. The State charged Burch with two counts that listed TB as the victim: one count of second degree incest and indecent liberties with forcible compulsion.

*Trial Court Proceedings*

Burch went to trial in January 2020, but a mistrial was ordered as a result of conflict between Burch and his counsel. Before trial, the State had brought a motion in limine to "exclude instances of conduct by the victims related to their character for truthfulness." Report of Proceedings (RP) (Jan. 6, 2020) at 15. Burch opposed the motion and told the court that he wanted to cross-examine DB about specific instances where she stole money from the household. Burch stated to the trial court,

> [T]here are some instances where [DB], one of the alleged victims, allegedly takes money from the household, and it was an issue, and that was actually one of the reasons why she left the home. And so it might come up that she was not -- in fact, I think the mom brings it up, or brought it up in her interview, that she's -- she doesn't have a good reputation for truthfulness.

---

[1] We refer to Debra by first name to avoid confusion. No disrespect is intended.

RP (Jan. 6, 2020) at 16. Burch explained that his theory was that DB was a troubled youth and that his position was that DB was not being truthful. The court granted the State's motion.

Burch's second trial, with new defense counsel, took place in October 2021. When discussing motions in limine, defense counsel did not ask to cross-examine DB about stealing money. The trial court noted that they had "an extensive discussion about that previously." RP (Sept. 20, 2021) at 18. Defense counsel responded that those issues "were specifically ruled on by this Court. And as far as I'm concerned that's all res judicata, that's already been decided." RP (Sept. 20, 2021) at 18.

The evidence consisted mostly of witness testimony, including testimony from DB, TB, Debra, and Burch. DB testified that beginning when she was 14 years old, Burch raped her at least once or twice a week until she left home at age 18. He raped her vaginally, anally, and orally. Burch forced DB into various positions when he raped her. The rapes caused DB pain, and she hurt all the time. Burch repeatedly forced his penis down DB's throat so far that she would choke and could not breathe. The first time Burch raped DB anally it was painful and there was blood everywhere. Burch never did anything to make the rapes less painful.

The State's direct examination of DB involved the prosecutor asking DB to describe in detail when and where Burch raped her and what body parts were involved. Defense counsel's cross-examination of DB focused on the number of interviews she had given, the details of her daily routine when she was in high school, and her previous counseling sessions.

*Incest Jury Instructions*

Jury instruction 21 stated, "A person commits the crime of incest in the first degree when he engages in sexual intercourse with a person whom he knows to be related to him, as an

ancestor, descendant, brother, or sister of either the whole or the half blood." Clerk's Papers (CP) at 206. And jury instruction 22 stated, "Descendant means any child of the defendant. A descendant also includes any stepchild or adopted child of the defendant who is under eighteen years of age." CP at 207.

However, the to-convict instructions for both counts of first degree incest stated that in order to convict Burch, the jury had to find beyond a reasonable doubt that DB was related to Burch "either legitimately or illegitimately as a daughter *of either the whole or the half blood*." CP at 208-09 (emphasis added).

If the jury found Burch guilty of third degree child rape and first degree incest, then they had to determine "[w]hether the crime was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time" and "[w]hether the defendant used his position of trust or confidence to facilitate the commission of the crime." CP at 216-17, 220-21.

*Closing Argument*

During closing argument, the prosecutor discussed DB's lack of motive to lie. The prosecutor stated,

> [DB] hasn't lived in that house in years. She hadn't lived in that house for three years before she disclosed. What is she getting out of this? *A really fun time being picked upon on the stand talking about her body parts?* Talking about her anus bleeding at the hands of her dad? Is that the kind of sought attention that she wants? You heard no reasonable motive for this. None whatsoever, and that is relevant.

RP (Oct. 7, 2021) at 528 (emphasis added). Burch did not object.

When trying to convince the jury that DB and TB were not lying just to get a reaction out of Burch and to get something they wanted, the prosecutor stated,

> They have absolutely no relationship with William Burch at this point and they haven't for years. Presumably their reaction has come. The reaction came on October 18th, 2018. If that was a lie, it could have ended there. *Why sit through hours of interviews, being poked apart?* For what?

RP (Oct. 7, 2021) at 529-30 (emphasis added). Burch did not object.

The prosecutor stated three times that DB was "the perfect victim" because she was a child from a rough background and nobody would believe her. RP (Oct. 7, 2021) 508, 538. Burch did not object to any of those statements.

The prosecutor described to the jury how DB's change in behavior once she entered high school corroborated her story. The prosecutor stated, "Well, it's easy to see what she'd be depressed about, because every week her dad was *using her as his own private sex doll*." RP (Oct. 7, 2021) at 526 (emphasis added). Burch objected and the trial court overruled the objection.

When discussing DB's credibility, the prosecutor stated that "[s]ome of those moments in which she broke down, it's important to think of, *because it would take a world-class actress to pull some of that off*." RP (Oct. 7, 2021) at 532 (emphasis added). Burch objected and the trial court asked the jury to step out of the courtroom before listening to the attorney's arguments. The court admonished the prosecutor, stating that "it's walking a fine line and at this point in the case and where this case has gone, I don't think you want to go." RP (Oct. 7, 2021) at 535. However, the court did not rule on the objection.

While explaining to the jury why the State proved its case beyond a reasonable doubt, the prosecutor stated that "the defendant's theories or the defendant's testimony [was] not credible" and "there is no reasonable motive that you can point to." RP (Oct. 7, 2021) at 523. Burch objected and the trial court sustained the objection. The prosecutor stated again that the

"[d]efendant's testimony was not credible. [DB's] was." RP (Oct. 7, 2021) at 532. Burch objected and the trial court sustained the objection. Finally, the prosecutor argued that DB would have to be a "sophisticated liar" in order to make up the story about the first time Burch raped her at the family beach house. RP (Oct. 7, 2021) at 538. And that the story wasn't "tighter . . . [b]ecause it's true, and she's just telling you what happened to her." RP (Oct. 7, 2021) at 538. Burch did not object to those statements.

The prosecutor also stated that the jury would have to determine whether there was an ongoing pattern of sexual abuse. The prosecutor then stated, "That, I think, shows very clearly that there was." RP (Oct. 7, 2021) at 522. Burch did not object.

*Verdict*

The jury found Burch not guilty of indecent liberties with forcible compulsion and second degree incest – the two charges relating to TB. But the jury found Burch guilty of all the charges relating to DB. The jury also returned special verdicts of aggravating circumstances – an ongoing pattern of sexual abuse of the same victim under the age of 18 and using a position of trust or confidence to facilitate the crime – for both counts of third degree child rape and both counts of first degree incest. The jury found the same aggravating circumstances along with the victim being under the age of 15 at the time of the offense for both counts of second degree rape.

Burch appeals his convictions.

ANALYSIS

A.   BURDEN OF PROOF ON INCEST CHARGES

Burch argues, and the State concedes, that sufficient evidence did not support his two convictions of first degree incest. We agree.

6

RCW 9A.64.020(1)(a) states,

> A person is guilty of incest in the first degree if he or she engages in sexual intercourse with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

Descendants include adopted children that are under the age of 18. RCW 9A.64.020(3)(a).

However, jury instructions 23 and 24 stated that in order to convict Burch of first degree incest, the State had to prove beyond a reasonable doubt "[t]hat [DB] was related to [Burch] either legitimately or illegitimately as a daughter of either the whole or the half blood." CP at 208-09. The law of the case doctrine provides that jury instructions not objected to are treated as the properly applicable law. *State v. Anderson*, 198 Wn.2d 672, 678, 498 P.3d 903 (2021). Therefore, " 'the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction.' " *Id.* at 679 (quoting *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998)).

There was no mention of "descendant" in the to-convict jury instructions, and the instruction included the additional element that the defendant be related by blood to the victim. Because DB is Burch's adopted daughter and there was no evidence that DB is related to Burch by blood, the State did not prove first degree incest as instructed beyond a reasonable doubt.

Accordingly, we reverse and remand for the trial court to dismiss Burch's two first degree incest convictions with prejudice.

B.      PROSECUTORIAL MISCONDUCT

Burch argues that the prosecutor engaged in misconduct during its closing argument by (1) disparaging defense counsel, (2) inflaming the jury, and (3) bolstering the State's witnesses.

We conclude that the prosecutor's statements either were not improper, that Burch cannot show prejudice, or Burch waived his claim by not objecting at trial.

    1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). Our analysis considers "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury verdict. *Id.*

When the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Zamora*, 199 Wn.2d at 709 (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." *Zamora*, 199 Wn.2d at 709.

    2.    Disparaging Defense Counsel

Burch argues that the prosecutor impugned defense counsel during closing argument when she stated that DB had been "picked upon" and "poked apart." We disagree.

It is improper for a prosecutor to impugn the role or integrity of defense counsel. *State v. Fleeks*, 25 Wn. App. 2d 341, 377, 523 P.3d 220 (2023). Statements that " 'fundamentally

undermine' " the role or integrity of defense counsel constitute misconduct. *Id.* (quoting *State v. Lindsay*, 180 Wn.2d 423, 433, 326 P.3d 125 (2014)).

The Supreme Court in *Lindsay* discussed multiple cases where statements by the prosecution were considered to be impugning defense counsel. *Lindsay*, 180 Wn.2d at 433-34. In all of the cases, the prosecutor specifically and negatively commented on defense counsel and their role in the trial. For example, in *Lindsay*, the prosecutor called defense counsel's argument a "crock." *Id.* In *State v. Negrete*, the prosecutor said that defense counsel was "being paid to twist the words of the witnesses by [the defendant]." 72 Wn. App. 62, 66, 863 P.2d 137 (1993) (emphasis omitted). And in *State v. Thorgerson*, the prosecutor referred to defense counsel's case as "bogus" and "involving 'sleight of hand.' " 172 Wn.2d 438, 451-52, 258 P.3d 43 (2011).

Here, regarding motive, the prosecutor first stated, "What is she getting out of this? *A really fun time being picked upon on the stand talking about her body parts?* Talking about her anus bleeding at the hands of her dad? Is that the kind of sought attention that she wants?" RP (Oct. 7. 2021) at 528 (emphasis added). However, the prosecutor did not mention defense counsel and she was not discussing defense counsel's cross-examination of DB. Instead, it was the prosecutor who asked DB on direct examination about the parts of her body that Burch penetrated. Defense counsel did not ask DB about any of her body parts on cross-examination. We conclude that the prosecutor's statement did not impugn defense counsel.

The prosecutor also stated, "If that was a lie, it could have ended there. *Why sit through hours of interviews, being poked apart?* For what?" RP (Oct. 7. 2021) at 529-30 (emphasis added). But again the prosecutor did not mention defense counsel and she was not commenting on something that was exclusive to the role of defense counsel. DB did not interview only with

the defense; she also interviewed with a forensic detective and a police detective. In fact, it was defense counsel who asked DB on cross-examination about all of the different types of interviews she had. We conclude that the prosecutor's statement did not impugn defense counsel.

Burch also argues that these statements burdened his constitutional right to assistance of counsel and to confront adverse witnesses. But this argument fails because the prosecutor's statements did not impugn defense counsel.

### 3. Inflaming the Jury

Burch argues that the prosecutor appealed to the jury's passions by (1) calling DB the perfect victim, and (2) stating that Burch used DB as his own private sex doll. We disagree.

A prosecutor cannot use arguments to inflame the jury's passions or prejudices. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). "A prosecutor commits misconduct by asking jurors to convict based on their emotions rather than the evidence." *State v. Lucas-Vicente*, 22 Wn. App. 2d 212, 224, 510 P.3d 1006 (2022). However, the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Id.*

First, Burch argues that the prosecutor inflamed the jury by describing DB as "the perfect victim." (Oct. 7, 2021) at 508, 538-39. But these statements must be considered in context.

> Nobody's going to believe you. No matter what, no one's going to believe you. They're not going to believe you over me. You're a bad kid. You're going to get in trouble, because I'm the adult and you're the child. [DB] believed those words. She believed those words when William first told her that she might as well keep this quiet, because even if she came forward, no one was going to believe her. She was scared of him. She was a child, and his words carried a lot of weight. *William Burch picked the perfect victim*. He'd take the child that he could control.

RP (Oct. 7, 2021) at 507-08 (emphasis added).

10

> *William Burch picked the perfect victim*, a quiet, subservient girl from a rough background who he told nobody would believe, and he began a smear campaign against her to accomplish that very goal. *He picked the perfect victim*, and for four years he got away with it.

RP (Oct. 7, 2021) at 538-39 (emphasis added).

Considered as a whole, these comments reflected reasonable inferences from the evidence. The prosecutor was arguing that DB was a perfect victim from Burch's perspective because nobody would believe her due to her background and the fact that she got in trouble. We conclude that these statements were not improper.

Second, Burch argues that it was improper for the prosecutor to state that Burch was using DB "as his own private sex doll." RP (Oct. 7, 2021) at 526.

As the State acknowledges, in some cases the use of a term like "sex doll" would be improper. But here, the evidence supports this descriptive term. DB testified that Burch raped her regularly and repeatedly – vaginally, anally, and orally. DB stated that the rapes often caused her physical pain, caused her to choke and have difficulty breathing, and at times caused her to bleed. Burch in fact used DB like an inanimate sex doll, and the prosecutor's use of this analogy reflected a reasonable inference from the evidence. We conclude that this statement was not improper.

4.    Bolstering State's Witnesses

Burch argues that the prosecutor improperly bolstered the State's witnesses by (1) stating that DB would have to be a world class actress if she was not telling the truth, (2) giving personal opinions regarding the credibility of DB and Burch, and (3) giving an opinion that there was an ongoing pattern of sexual abuse.

11

A prosecutor commits misconduct when they state a personal belief as to the credibility of a witness. *Lucas-Vicente*, 22 Wn. App. 2d at 225. However, a prosecutor may address witness credibility based on reasonable inferences from the evidence. *Id.* For example, a prosecutor may argue that the defendant is not telling the truth if the prosecutor refers to evidence or inferences supporting that argument. *State v. Copeland*, 130 Wn.2d 244, 290-91, 922 P.2d 1304 (1996).

First, Burch argues that the prosecutor committed misconduct by suggesting that DB was credible because she broke down on the stand and "it would take a world class actress to pull some of that off." RP (Oct. 7, 2021) at 532. Burch objected to this statement, and the trial court seemed to agree that the statement reflected the prosecutor's personal opinion. Although the court removed the jury to discuss the issue, the court did not rule on the objection.

But even if the prosecutor's statement expressed a personal opinion regarding DB's credibility, Burch cannot show prejudice. The prosecutor did not elaborate on this comment and moved on to another subject following the objection. Burch cannot show that there is a substantial likelihood that the statement affected the jury verdict. *See Slater*, 197 Wn.2d at 681.

Second, Burch argues that it was improper when the prosecutor stated that (1) "the defendant's theories or the defendant's testimony [was] not credible" and "there is no reasonable motive that you can point to," RP (Oct. 7, 2021) at 523; and (2) the "[d]efendant's testimony was not credible" and that "[DB's] was." RP (Oct. 7, 2021) at 532. But the trial court sustained Burch's objections to these statements, and there is no indication that they prejudiced him.

Third, Burch argues that the prosecutor expressed a personal opinion of DB's credibility by telling the jury, "[I]f you're a big liar, if you're a really sophisticated liar who can develop

12

this level of lie, why wouldn't she have made that tighter? . . . Because it's true, and she's just telling you what happened to her." RP (Oct. 7, 2021) at 538. However, Burch did not object to this statement. And Burch cannot show that the statement was flagrant and ill-intentioned or that a jury instruction could not have cured any prejudice. *See Zamora*, 199 Wn.2d at 709.

Fourth, Burch argues that the prosecutor expressed a personal opinion by stating, "You'll also have to determine if you find him guilty of either, of any of these counts whether there was an ongoing pattern of sexual abuse. That, I think, shows very clearly that there was." RP (Oct. 7, 2021) at 522. But again Burch did not object, and he cannot show that the statement was flagrant and ill-intentioned or that a jury instruction could not have cured any prejudice. *See Zamora*, 199 Wn.2d at 709.

5. Cumulative Misconduct

Burch argues that the cumulative effect of the improper conduct affected the jury's verdict. The cumulative effect of repeated prosecutorial misconduct may require reversal under certain circumstances. *See Glasmann*, 175 Wn.2d at 707. But we conclude that those circumstances are not present here.

C. INEFFECTIVE ASSISTANCE OF COUNSEL

Burch argues that he received ineffective assistance of counsel when defense counsel at the second trial failed to ask the trial court to reconsider its ruling in the first regarding cross-examination about DB stealing money. We disagree.[2]

---

[2] Burch also argues that the trial court erred at the first trial when it prohibited the cross-examination of DB about stealing money from the household. But evidentiary rulings from a trial that results in a mistrial cannot be appealed following a second trial.

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced them. *State v. Clark*, 17 Wn. App. 2d 794, 798, 487 P.3d 549 (2021), *review denied*, 198 Wn.2d 1033 (2022). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 799. We strongly presume counsel's performance was reasonable. *Id.*

Where counsel's failure to make a motion is the basis for a claim of ineffective assistance, the defendant must show that the motion would have been granted. *State v. Scabbyrobe*, 16 Wn. App. 2d 870, 874, 482 P.3d 301, *review denied*, 197 Wn.2d 1024 (2021).

Here, as the State concedes, defense counsel incorrectly stated that the prior evidentiary ruling was res judicata. *See State v. Nelson*, 108 Wn. App. 918, 925-26, 33 P.3d 419 (2001) (res judicata inapplicable because an evidentiary ruling is not a final judgment). But his failure to request reconsideration was deficient only if the trial court would have reconsidered its prior ruling. *See Clark*, 17 Wn. App. 2d at 799; *Scabbyrobe*, 16 Wn. App. 2d at 874. There is no indication in the record that the trial court would have done so. It is reasonable to conclude that arguing the same evidentiary issue in front of the same judge would result in the same outcome. Accordingly, we hold that Burch did not receive ineffective assistance of counsel.

## CONCLUSION

We reverse Burch's two first degree incest convictions and remand for the trial court to dismiss those convictions with prejudice and for resentencing, but we affirm Burch's remaining convictions.

No. 56445-9-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

PRICE, J.